stoUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAVERNE A. STOMER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:18-CV-00475-NCC |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Laverne A. Stomer ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 17) and Defendant has filed a brief in support of the Answer (Doc. 24). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 10).

## I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on August 6, 2014 (Tr. 171-79). Plaintiff was initially denied on September 11, 2014, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on November 7, 2014 (Tr. 89-93, 97-98). After a hearing, by decision dated February 10, 2017, the ALJ found Plaintiff not disabled (Tr. 9-24). On February

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

14, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-7). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019, and that Plaintiff has not engaged in substantial gainful activity since July 3, 2014, the alleged onset date (Tr. 14). The ALJ found Plaintiff has the severe impairments of degenerative disk disease of the cervical spine, obesity, right knee dysfunction, right shoulder dysfunction, and diabetic neuropathy/radiculopathy, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[2] with the following limitations (Tr. 15). She can never operate right foot controls (*Id.*). She can frequently reach overhead and in all other directions on the right side (*Id.*). She can frequently handle or finger on the right side (*Id.*). She can never climb ladders, ropes, and scaffolds (*Id.*). She can never balance or crawl (*Id.*). She can occasionally climb ramps and stairs (*Id.*). She can occasionally stoop, kneel, or crouch (*Id.*). She can never be exposed to extreme cold (*Id.*). The ALJ found Plaintiff had no past relevant work but that other jobs exist in significant numbers in the national economy that Plaintiff could perform including packer, cashier II, and spiral machine operator (Tr. 18-19). Thus, the ALJ concluded that a

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 416.967(b), 404.1567.

2

finding of "not disabled" was appropriate (Tr. 19). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to

3

establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id*. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's

conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's RFC (Doc. 17 at 3-11). Second, Plaintiff argues that the ALJ failed to fully and fairly develop the record (*Id.* at 11-13). Third, Plaintiff asserts that Plaintiff meets the GRID[3] requirements set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.12 (*Id.* at 13-14). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own

---

[3] The Grids "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." *Id.* (quoting *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993)).

5

description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ determined Plaintiff has the RFC to perform light work with the following limitations (Tr. 15). She can never operate right foot controls (*Id.*). She can frequently reach overhead and in all other directions on the right side (*Id.*). She can frequently handle or finger on the right side (*Id.*). She can never climb ladders, ropes, and scaffolds (*Id.*).

She can never balance or crawl (*Id.*). She can occasionally climb ramps and stairs (*Id.*). She can occasionally stoop, kneel, or crouch (*Id.*). She can never be exposed to extreme cold (*Id.*).

The Court will first consider the ALJ's evaluation Plaintiff's subjective complaints,[4] as the ALJ's evaluation of Plaintiff's symptoms was essential to the ALJ's determination of other issues, including Plaintiff's RFC. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of her analysis of Plaintiff's subjective complaints are based on substantial evidence.

---

[4] Social Security Ruling (SSR) 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

First, the ALJ reviewed the objective medical evidence and found that the objective findings do not support the severity of the Plaintiff's subjective complaints (Tr. 15-16). In doing so, the ALJ conducted a thorough review of the medical evidence encompassing nearly three pages of her decision (Tr. 15-17). In her review, the ALJ noted that the Plaintiff's degenerative disk disease of the cervical spine, right shoulder dysfunction, and diabetic neuropathy/radiculopathy do not result in limitations greater than those included in her RFC finding (Tr. 15). Specifically, the ALJ highlighted mild objective imaging from an August 2015 x-ray indicating only mild C5-C6 retrolisthesis and degenerative disk disease and a consultative examiner's report noting that Plaintiff's cervical spine moved "fully and painlessly" (Tr. 15, 323, 407). *See also* Tr. 346 (April 2015 x-ray likewise finding "mild C5-C6 degenerative disc disease without osseous central canal stenosis"); Tr. 463 (August 2015 MRI indicating "[m]ild to moderate degenerative changes of the cervical spine"). Similarly, the ALJ noted that a consultative examiner found only a mild degree of crepitus in Plaintiff's right shoulder and that Plaintiff had not received any treatment for this condition during the disability period (Tr. 15, 323-24, 327). *See also* Tr. 28 (counsel at a supplemental hearing indicating that there was not any imagery regarding the right shoulder and that "it's possible what [the consultative examiner] thought was a shoulder was actually the cervical spine."). Further, the ALJ found it notable that Plaintiff still drives which requires her to be able to turn her head (Tr. 15, 46, 213). As for Plaintiff's diabetic neuropathy or radiculopathy, the ALJ indicated that Plaintiff's treating physician determined that symptom management with pain medication was the best option for treatment (Tr. 16, 460). Although the ALJ found that medication does not completely control this specific condition, she also noted that additional limitations were not warranted, highlighting relatively normal findings from the record (Tr. 16, 242 (full list of medications)). Indeed, the

8

limited medical record consists of largely normal physical findings. For example, in addition to those records indicated above, her treating physician found her to have normal gait and stance, able to walk on her heels, and able to walk on her toes (Tr. 459). An ALJ may properly consider the consistency of Plaintiff's subjective complaints with the objective medical evidence. *Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017). To the extent the Plaintiff identifies records that support Plaintiff's allegations to the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

Second, the ALJ detailed the largely conservative management of Plaintiff's conditions, finding that this evidence does not support including limitations beyond those stated in the RFC determination (Tr. 17). Specifically, the ALJ noted that Plaintiff "does not use an assistive device for ambulation, has not attended physical therapy, has not had chiropractic management, has not used a TENS unit, has not used a brace, and no treating physician has recommended that [Plaintiff] undergo surgery" (Tr. 17). The ALJ also indicated that Plaintiff previously received injection treatments but that she did not receive any during the disability period (Tr. 17, 302-03, 353-54). An ALJ may properly consider Plaintiff's conservative treatment history in her determination of a plaintiff's credibility. *See, e.g., Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (conservative course of treatment supported ALJ's decision to discredit subjective complaints of pain). While Plaintiff was subsequently prescribed a cane "for ambulatory assistance" on March 24, 2017, after the ALJ's decision was issued, as noted by the Appeals Council, this evidence did not relate to the period at issue and, therefore, would not have altered the ALJ's decision (Tr. 2, 8). 20 C.F.R. §

404.970(b) (The Appeals Council will consider new and material evidence where it relates to the period on or before the date of the ALJ hearing decision); *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (The evidence must be "non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied" and must not concern "subsequent deterioration of a previously non-disabling condition."). In fact, as addressed above, Plaintiff's treating physician described her gait as normal during the relevant period (Tr. 17, 459). *See also* Tr. 324 (Dr. O'Day similarly finding normal gait); 698 ("Patient arrived ambulating with steady gait.").

Third, the ALJ found that Plaintiff's "activities of daily living are not as limited as one would expect given the allegations of disabling impairments" (Tr. 17). The ALJ notes that Plaintiff drives, washes laundry, watches television, talks on the phone, reads fiction books, spends time with her adult children, uses social media, and attends church services (Tr. 17, 46, 54-55, 57-60, 67-68, 213-14). The ALJ also indicated that Plaintiff reported having no difficulty following written or spoken instructions, dressing herself, bathing or grooming, eating or feeding, cooking, cleaning, and shopping (Tr. 17, 53, 56, 59, 211-15, 371-72). The ALJ may properly consider Plaintiff's daily activities in evaluating Plaintiff's subjective complaints. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility"); *Bernard v. Colvin*, 774 F.3d 482, 489 (8th Cir. 2014) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)) ("'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'"); *Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014) (finding the plaintiff's reported ability to

perform light housework, cook, do laundry, shop, watch TV, drive, leave the house alone, and regularly attend church "undermines her assertion of total disability").

Fourth, the ALJ also considered that "none of the [Plaintiff's] treating doctors offered an opinion that the [Plaintiff[ was disabled or made any statement or recommendation that [Plaintiff] was unable to work at a level of substantial gainful activity" (Tr. 18). Indeed, as noted by the ALJ, when Plaintiff asked for a note to be excused from jury duty because Plaintiff did not believe she could sit for hours at a time, her treating physician refused, noting that Plaintiff's workup had been "largely negative" (Tr. 18, 704). *Bryant*, 861 F.3d at 784 (finding "the ALJ rightfully noted the lack of any medical provider making allowances for any disability in [plaintiff's] care.").

In addition to fully evaluating Plaintiff's subjective complaints, the ALJ also addressed the medical opinion evidence of record (Tr. 17-18). Specifically, the ALJ considered the May 21, 2014 opinion of consultative examiner Michael J. O'Day, DO ("Dr. O'Day"), affording it "some weight" (*Id.*). The ALJ noted that Dr. O'Day opined that Plaintiff would have difficulty with repetitive pushing, pulling, and sustained overhead reaching at the right shoulder; difficulty with heavier lifting and carrying at the right upper extremity; difficulty with repetitive forceful foot controls on the right, ladders, and repetitive stair usage; difficulty walking on uneven terrain; could stand and walk for a curtailed distance; could stand and/or walk at least two or more hours daily; and could lift and carry without utilizing heavy weights (Tr. 17-18). The ALJ determined that the opinion did not merit "great weight" because it suggests greater limitations than are supported by the medical evidence, as described by the ALJ, except to the extent Plaintiff had normal gait without the use of an assistive device (Tr. 18). In addition to finding the opinion largely inconsistent with the record as a whole, the ALJ noted that Dr. O'Day only

11

saw the Plaintiff on one occasion and that "his suggested limitations appear to be based on the [Plaintiff's] subjective complaints rather than his findings" (Tr. 18). *Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) (finding the ALJ properly discounted physician's opinion when the record reflected that physician only examined plaintiff on one occasion and his assessment was largely based on plaintiff's subjective complaints).

Plaintiff asserts that the ALJ failed to fully and fairly develop the record because the record does not contain any medical evidence that addresses Plaintiff's physical ability to function in the workplace and that supports the RFC assessment during the period of disability (Doc. 17 at 11-13). However, as addressed above, the ALJ reviewed and properly considered the opinion of the consultative examiner, Dr. O'Day (Tr. 17-18). Plaintiff incorrectly asserts that because Dr. O'Day evaluated Plaintiff approximately one month prior to the alleged onset date that it cannot be relied upon. Indeed, Dr. O'Day's opinion is dated approximately one month prior to Plaintiff's alleged onset date and two months prior to Plaintiff's application date. However, the ALJ must evaluate every medical opinion she receives and may develop a claimant's medical history for approximately a year prior to her application date. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); 20 C.F.R. § 404.1512(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."). "[T]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin¸* 829 F.3d 926, 932 (8th Cir. 2016).

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, as well as the evaluation of Plaintiff's subjective complaints. As the Court has determined that the ALJ's RFC finding is supported by substantial evidence, Plaintiff also cannot be found disabled under the GRID requirements set for at 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.12.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 13th day of September, 2019.

  /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE